UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
DAN FRIEDMAN                  :    Civil No. 3:14CV00378(AWT)
                              :
v.                            :
                              :
STHREE PLC., et al.           :    October 24, 2016
                              :
------------------------------x
```

**ORDER RE: DISCOVERY**

On October 7, 2016, this Court held an in-person Discovery Conference to address the issues raised by defendants regarding plaintiff Dan Friedman's ("plaintiff") discovery responses. [Docs. ##182, 191]. Plaintiff and his counsel, and counsel for defendants participated in that conference. At the conference, defendants indicated that they were unsatisfied with the responses from plaintiff to their discovery requests. The Court thoroughly addressed each of defendants' discovery requests, and defendants' concerns regarding plaintiff's production. The Court also engaged in an ex parte conference with plaintiff and his counsel, with the consent of defendants' counsel, to discuss the scope of the searches conducted to date.

Following the conference, the Court issued a Memorandum of Conference and Order requiring plaintiff "to perform additional searches; to review the results of each search; to provide a certification detailing the nature of each search; and to

identify any records that have not been produced on the basis of privilege in a privilege log[.]" Doc. #182 at 2. The Court carefully detailed the requirements for the additional searches, the review process, and the certification. See generally, id. The Court imposed a deadline of October 17, 2016, for the production of the additional disclosures and certification. To the extent defendants found deficiencies in plaintiff's additional production, the Court required defendants to file a notice with the Court by October 19, 2016, identifying said deficiencies. See id. at 12.

On October 13, 2016, the Court held a telephonic status conference, on the record, to ensure that plaintiff was prepared to meet the disclosure deadline of October 17, 2016. [Doc. #187]. At the October 13, 2016, conference, counsel for plaintiff requested a two day extension of the disclosure deadlines, which the Court denied, due to the lengthy delays that have already occurred in this case. See id. The Court also reiterated that plaintiff was required to conduct the searches anew, and stressed the importance of disclosing the documents by the Court-ordered deadline. On October 17, 2016, as required, plaintiff filed a certification regarding discovery. [Doc. #190]. On October 19, 2016, counsel for the SThree defendants and counsel for the Palladyne defendants each filed a response to plaintiff's certification and disclosure. [Docs. ##193, 194].

Defendants' responses assert that there are numerous deficiencies with plaintiff's October 17, 2016, production. On October 21, 2016, plaintiff filed a response to defendants' notices. [Doc. #198].

The Court held a telephonic status conference on the record on October 21, 2016, in which counsel for all parties participated to discuss the alleged deficiencies.

After consideration of the plaintiff's certification, defendants' notices, plaintiff's response, and the statements made on the record on October 21, 2016, the Court has determined that plaintiff has failed to adequately respond to the defendants' discovery requests and to comply with the Court's orders, and that sanctions are therefore appropriate.

## I.   __Legal Standard__

Federal Rule of Civil Procedure 37 "provides a non-exclusive list of sanctions that may be imposed on a party for failing to obey an order to provide or permit discovery." Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 179 F.R.D. 77, 80 (D. Conn. 1998) (citing Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd., 930 F.2d 1021, 1027 (2d Cir. 1991)); see also Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). "Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order."

Tucker v. Am. Int'l Grp., Inc., 936 F. Supp. 2d 1, 26 (D. Conn. 2013) (quoting Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir. 1991)). "Monetary sanctions pursuant to Rule 37 for noncompliance with discovery orders usually are committed to the discretion of the magistrate, reviewable by the district court under the 'clearly erroneous or contrary to law' standard." Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990).

Sanctions under Rule 37 are designed to effectuate three goals:

> First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed is in some sense at fault.

Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 71 (2d Cir. 1988) (citations omitted). "When parties and/or their counsel fail in their duty to conduct proper searches of ESI, sanctions may be appropriate, even where the misconduct involves late disclosure, as opposed to spoliation." Nycomed U.S. Inc. v. Glenmark Generics Ltd., No. 08CV5023(CBA), 2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010) (citation omitted).

## II.  Discussion

In the instant matter, plaintiff has repeatedly failed to meet his discovery obligations under the Federal and Local Rules

of Civil Procedure. He has also failed to comply with the
Court's Order of October 7, 2016. Among the deficiencies in
production observed by the Court, plaintiff still has not
clearly and unequivocally explained the scope of his search in
response to defendants' requests; has not diligently and
appropriately sought copies of documents in his control but in
the physical custody of third parties; and has not timely
provided all responsive materials to defendants. This case has
been pending since March 25, 2014, and the parties are still
conducting jurisdictional discovery, largely because of the
plaintiff's failure to pursue the matter diligently[1] and to meet
his obligations. It is against that background that the Court
evaluates the current disputes.

    **A.    <u>Electronic Production and Certification</u>**

    Plaintiff's certification indicates that after additional
searches were conducted on the search terms ordered by the
Court, "[a]ll of the documents reviewed and found to be
responsive were produced before 5pm EDT on October 17. Those
documents were the ones that were (1) located pursuant to the
searches conducted as described in ¶¶2-4 and (2) **not previously
produced.**" Doc. #190 at 2 [sic]. It appears to the Court that

---

[1] For instance, on March 16, 2016, after seven months of
inaction, defendants filed a motion to dismiss this matter for
lack of prosecution. <u>See</u> Doc. #106.

after conducting the Court-ordered searches, plaintiff disclosed only those records that plaintiff believes were not disclosed originally. The problem with this approach is that plaintiff's counsel has never been able to accurately describe the universe of documents already produced to defendants.[2] The Court intended to require the plaintiff to produce all documents identified during the new searches that are responsive to defendants' requests, because it was clear to the Court that plaintiff did not have a complete and accurate understanding of what had and had not been produced previously. The Court also intended for new searches to be conducted without limitation by any prior disclosures because it appeared that prior searches and reviews

---

[2] A glaring illustration of this problem relates to plaintiff's Dutch bank records. At the October 7, 2016, conference, plaintiff's counsel asserted that the records of plaintiff's Dutch bank account had been produced. Defense counsel asserted that they had not. Plaintiff's counsel responded: "We will -- my understanding was that we had the production and we gave it to them. We will check and see, whatever we've got they can have." Doc. #191 at 41. The Court inquired as to whether counsel could identify the Bates numbers of the Dutch bank records, and counsel could not. Plaintiff's counsel had failed to bring a copy of the records produced to date with him to the conference, so, at the Court's request, defense counsel provided a copy to plaintiff's counsel, and the Court requested that he review it and identify the responsive Dutch bank records. After a review of the production, counsel was unable to locate any such records. He stated that he "recall[ed] a back and forth about Dutch bank records" and that "maybe [he] got confused" and was thinking, instead, of Dutch tax returns. Id. at 43-44. Counsel then appeared to concede that the Dutch bank records had not been produced.

had been conducted solely by the plaintiff, rather than by counsel.

Plaintiff's counsel has made contradictory representations about the discovery conducted to date, and his involvement therein. For example, at the October 7, 2016, conference, he stated that he "personally got involved in this this week in terms of finally going into the computer." Doc. #191 at 10. Later in the conference counsel suggested that he had in fact only conducted a review of the documents the night before the conference. See Doc. #191 at 67 ("THE COURT: Okay, And when did you conduct those reviews of the emails? MR. KAUFMAN: That was -- those must have been -- would be last night."). He further stated that "Mr. Friedman did numerous searches[]" and that "[h]e goes through, he produces them." Id. at 14. See also id. at 68 ("My client conducted numerous searches where I discussed with him what needed to be produced[.]"). These statements support the conclusion that counsel was uninvolved in the search process until shortly before the October 7, 2016, conference. Indeed, the Court asked counsel whether he or someone else with legal expertise had reviewed the emails returned by each search term, and counsel stated that he had not. Id. at 16.

As the Court has repeatedly reminded counsel, he has an ongoing duty to oversee plaintiff's efforts to comply with discovery requests. See Doc. #191 at 14-15, 16.

A party's discovery obligations do not end with the implementation of a "litigation hold" — to the contrary, that's only the beginning. Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents. Proper communication between a party and her lawyer will ensure (1) that all relevant information (or at least all sources of relevant information) is discovered, (2) that relevant information is retained on a continuing basis; and (3) that relevant non-privileged material is produced to the opposing party.

Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 432 (S.D.N.Y. 2004). "[F]or the current 'good faith' discovery system to function in the electronic age, attorneys and clients must work together to ensure that both understand how and where electronic documents, records and emails are maintained and to determine how best to locate, review, and produce responsive documents. Attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search." Richard Green (Fine Paintings) v. McClendon, 262 F.R.D. 284, 290 (S.D.N.Y. 2009) (citation omitted).

Plaintiff's counsel also represented that shortly before the October 7, 2016, conference, a search was conducted of plaintiff's Gmail account on about 30 search words, which returned results of between two hundred and five hundred emails per search word. See Doc. #191 at 11. Once those results were obtained, counsel stated, "we have to go through them all to take out attorney-client, we have to literally do them one-by-one." Id. In response to inquiry from the Court, counsel stated

that a total of about 1,500 documents had been produced. The Court then calculated that if 30 search terms produced between 200 and 500 results each, that would create a universe of 6,000 to 15,000 emails; the Court inquired, then, why so many of these emails had been withheld, particularly since no privilege log had been produced. Id. at 13-15. Counsel indicated that "Mr. Friedman has been able to -- has been able to siphon out the stuff that was attorney-client privilege." Id. at 15. Counsel seemed to suggest that the emails had been found to be non-responsive, rather than responsive but privileged, but was unclear. It is thus not clear to the Court -- still -- whether the emails produced by searching particular terms were reviewed for responsiveness, for privilege, or both, and whether any person with legal training was involved in that review.

Plaintiff's counsel further stated, definitively, that Mr. Friedman had no email accounts other than Gmail that he used during the relevant time frame. See Doc. #191 at 28. Defense counsel stated that they had reason to believe that plaintiff had a Yahoo! account during this time period. The Court inquired:

> THE COURT: Okay. All right. So on the Yahoo account?
>
> MR. KAUFMAN: The Yahoo account's been defunct for at least five to six years, and was never used at any time related to anything to do with Amsterdam ever. This is a matter of us disclosing –

> THE COURT: So he's had no -- he hasn't used the Yahoo
> account for any purpose –
>
> MR. KAUFMAN: None.
>
> THE COURT: -- since January 1st, 2010?

Doc. #191 at 31. Counsel then appeared to backtrack from the

assertion that the Yahoo! account had not been used for any

purpose during the relevant time period:

> MR. KAUFMAN: We're going to check back. His clear
> recollection is he never used it for any job search
> before he ever heard of Palladyne or after.
>
> THE COURT: I want to ask two different questions here.
>
> MR. KAUFMAN: Sure.
>
> THE COURT: One is did he use it for any purpose after
> January 1st, 2010, including grub-hub or you know?
>
> MR. KAUFMAN: Whatever it is.
>
> THE PLAINTIFF: It would receive spam, and you know
> subscriber-type emails, and I'd look at them. I haven't
> sent anything –
>
> THE COURT: No outgoing since January 1st, 2010?
>
> MR. KAUFMAN: No.

Doc. #191 at 31-32. However, when the Court observed plaintiff's

Yahoo! account directly, in camera, the Court noted a

significant amount of activity in the Yahoo! account during the

relevant time period. The Court, of course, did not review the

account to determine whether it contained any responsive emails,

but it clearly was in operation, in some manner, during the

relevant time period. During the conference call with the Court

on October 21, 2016, plaintiff's counsel asserted that plaintiff
had implemented an email forwarding system by which emails
directed to his Yahoo! account were "intercepted" and forwarded
to his Gmail account without ever appearing in the Yahoo!
account. Counsel was unable to explain how this was possible,
but again asserted that there were no responsive emails
contained in the Yahoo! account. Despite the Court's own <u>ex
parte</u> observations, plaintiff's counsel stated that email during
the relevant timeframe sent to plaintiff's Yahoo! address would
have appeared <u>not</u> in the Yahoo! account, but rather, only in the
Gmail account.

In sum, plaintiff's counsel has made it virtually
impossible for either the defendants or the Court to gain a
clear understanding of what searches were conducted, when, and
by whom, and whether the results of the searches were reviewed
for responsiveness or privilege, or both.

Plaintiff's certification regarding the results of the
searches does not, unfortunately, resolve the mystery of the
scope of plaintiff's searches and production. Defendants note,
for instance, that the number of "responsive" records returned
by each search term, as described in the certification, does not
match the number of records with each search term actually
produced to defendants. Specifically, plaintiff's certification
indicates that no responsive records were found for particular

search terms; however, plaintiff produced records as part of his October 17, 2016, production that include those particular search terms in the body of the record. Plaintiff's counsel asserted that when multiple search terms resulted in the identification of a single responsive document, plaintiff reported that document as resulting from the search on only one term, rather than the search on each term that in fact returned the document. It is therefore impossible to tell whether a particular search term yielded responsive records, and whether all such records were necessarily produced.

Defendants also note that plaintiff's certification states that only the inbox, sent and spam folders were searched in both plaintiff's Gmail and Yahoo! email accounts. See Doc. #190 at 2. A search of only certain subfolders within plaintiff's email accounts is inadequate; the Court was clear with plaintiff that a "full search" must be done of plaintiff's Yahoo! account, which had previously not been disclosed, Doc. #190 at 8, and the Court did not limit the additional search terms to specific subfolders in the Court's October 7, 2016, order. The need for a search of all folders is particularly significant in this case, because plaintiff has represented that some documents from the relevant time period in his Gmail account were in separate "archive" folders.

It is unclear how, as a practical matter, plaintiff's
failures can be addressed effectively at this point. The Court
cannot directly oversee each and every aspect of this electronic
search and production. Plaintiff's deposition must go forward as
scheduled this week, as further delay is simply not an option.
It appears, based on the record to date, that requiring
plaintiff to conduct yet another search would fail to resolve
the problems that persist. In the alternative, the Court has
considered directing plaintiff to provide all electronic data to
an independent third party, which would then conduct appropriate
searches and produce appropriate reports, at plaintiff's
expense. The Court has further considered requiring plaintiff to
disclose all communications containing particular search words,
whether or not they are otherwise responsive to the requests.

This case, as noted above, in still at the jurisdictional
discovery stage. Accordingly, the Court will not order
additional electronic discovery at this point. However,
plaintiff is cautioned against asking the Court to draw
inferences in his favor based on items not located during
discovery, in light of his failure to conduct an adequate
search.[3] Monetary sanctions will be imposed at this time, as

_____

[3] The Court notes that plaintiff's counsel appeared, at the
October 21, 2016, conference, to claim that the fact that no
emails to family and friends were identified in which plaintiff
expressed his intentions regarding long-term relocation to

discussed more fully below. If this case proceeds beyond the
Court's consideration of motions to dismiss, the Court will
impose strict discovery and case management rules, and will
require <u>absolute compliance</u> by plaintiff. Failure to comply in
the future will result in additional sanctions, including
potential dismissal of this action.

## III. <u>Non-Electronic Production</u>

At the October 7, 2016, conference, plaintiff was ordered
to request responsive materials in his control but in the
custody of third parties, in particular, financial institutions.
<u>See</u> Doc. #182 at 8-10. That order was necessitated by
plaintiff's failure to make any efforts beyond downloading
readily available online records in response to requests for
financial information. <u>See, e.g.,</u> Doc. #191 at 36 (plaintiff's
counsel explaining that plaintiff had not sought to obtain any
records from PayPal other than those available by direct
download from the website); <u>id.</u> at 39 (plaintiff's counsel
asserting that he construes a "reasonable search" as being

---

Europe supported an inference that plaintiff had no such
intention. The Court finds this surprising, in light of
counsel's prior representation that plaintiff did not
communicate with his family by email. <u>See</u> Doc. #191 at 26
("Email communications with his mother, father, sister, he talks
to them by phone."); Doc. #191 at 74 ("[H]e communicates with
his family by phone."); Doc. #191 at 22 ("Mr. Friedman deals
with his friends by phone[.]").

limited to an online search); id. at 47-8 (plaintiff's counsel
stating that closed accounts are not accessible).

As to PayPal records, for example, the Court and counsel
for plaintiff had the following colloquy:

> THE COURT: Yes. Let me first ask you this, are
> there records from before June of 2013?
>
> MR. KAUFMAN: No, you can't get them off of PayPal.
>
> THE COURT: You can't get them by direct download, or
> they're –
>
> MR. KAUFMAN: Direct download.
>
> THE COURT: Can they be obtained by a request to
> PayPal?
>
> MR. KAUFMAN: I don't know, but we'll be happy to
> make it.

Doc. #191 at 36.

The Court therefore required plaintiff to "direct requests
for his financial records [to specific institutions] ... for
plaintiff's entire account history, including his transaction
history, for the relevant timeframe." Doc. #182 at 9. Plaintiff
was further ordered to "provide a copy ... of all requests for
responsive documents that were directed to third parties" with
plaintiff's certification on October 17, 2016. Id. at 11. At the
conference, with respect to these third-party requests, the
Court stated, "a request needs to be made directly to the
financial institution. And usually, a form needs to be filled
out, but every bank's a little different. ... And I'm going to

want to see all of those requests as part of the disclosure on the 17th as well." Doc. #191 at 128.

Instead of providing copies of requests actually made to the financial institutions with his certification, plaintiff provided what appear to be emails from plaintiff to his counsel with the text of letters from plaintiff to financial institutions cut and pasted into the body of the email. See Doc. #190 at 9-12. The text pasted into the emails suggests that plaintiff sent letters to the general, national customer service address of various institutions, inquiring if there was a way to obtain his records. The text indicates that the only method of contact provided by plaintiff to the institutions is an email address; no phone number is included.

Defendants contend that plaintiff's requests are "unlikely to result in prompt production because Plaintiff did not fill out any forms or formal requests for records." Doc. #193 at 11. The Court agrees that plaintiff's efforts are insufficient. It does not appear that plaintiff made an effort to speak with a representative from each institution to find out the procedure to obtain his records; instead, he sent a general inquiry, by mail, to each institution's general inquiry address, and did not even provide a phone number where he could be reached with a response. The Court was able, in only a few minutes of online research, to determine that most of the financial institutions

at issue have branches in Connecticut and/or New York. It is unclear why plaintiff did not simply visit a branch.

Therefore plaintiff shall immediately make a renewed effort to obtain his financial records from these third-party institutions. Plaintiff can visit, in person, the institutions, if possible, to obtain his records; plaintiff can also call the institutions to first determine their procedures and then request the records accordingly. Any request — be it in person, by phone, by email, by letter, by form, or by some other means – must be documented and then produced. **Such production, if it is of a letter or form, must include an actual copy of the letter or form that was provided to the institution.** The Court reminds counsel that he is obligated to oversee the discovery process on his client's behalf, and that this aspect of discovery is no exception.

The Court also ordered plaintiff to request plaintiff's legal file from Attorney Mario Musilli, the attorney who represented plaintiff in his foreclosure action and the sale of his home. When the Court inquired as to the status of the file on October 21, 2016, plaintiff's counsel stated that after the file had been requested on October 11, 2016, Attorney Musilli left a phone message indicating that he had no records other than those previously produced. This second-hand representation is insufficient; it provides no guidance as to what search was

conducted; who conducted the search; what records, if any, Attorney Musilli maintains; and what records he had previously produced to plaintiff. To the extent that Attorney Musilli has no records related to his legal representation of plaintiff, Attorney Musilli must so certify. Mr. Musilli cannot know what documents – if any – have been produced previously to the defendants in this matter. Thus, plaintiff must immediately request a certification from Attorney Musilli regarding what, if any, records are in his possession related to his representation of plaintiff. Any records that are disclosed by Attorney Musilli must be produced to defendants immediately, upon receipt. Any documents that are withheld on the basis of privilege shall be identified in a privilege log, in accordance with Rule 26(b)(5) of the Federal Rules of Civil Procedure.

Finally, although defendants had originally requested plaintiff's tax returns for the relevant time period, plaintiff apparently never actually requested his records from the IRS for the relevant tax years, representing instead that he had not filed taxes in 2012 and 2013 and therefore, there would be no returns to request and produce. Accordingly, on October 7, 2016, the Court required plaintiff to request from the IRS a copy of his tax return and/or verification of non-filing for the requested years. The form provided in court to plaintiff's counsel, IRS form 4506-T, states that most requests are

processed within 10 business days. Plaintiff's certification indicates that the request was made by certified mail on October 11, 2016. See Doc. #190 at 3, 9. Thus, this information should soon be returned from the IRS, and must be disclosed to the defendants immediately upon receipt. In addition, the Court ordered plaintiff to provide defendants with a copy of the completed form; no such copy was produced. Accordingly, plaintiff must produce to defendants a copy of the Form 4506-T that was sent to the IRS immediately.

**IV.  Deposition of Plaintiff**

Plaintiff's deposition is scheduled to take place on October 26, 2016, at 10:00 a.m. Defendants request that, in light of the ongoing deficiencies with plaintiff's document production, the Court grant defendants additional time to depose plaintiff beyond the one day, seven hour limit set forth in Rule 30(d)(1) of the Federal Rules of Civil Procedure "with respect to any documents produced by Plaintiff after October 17, 2016." Doc. #193 at 5. The motion for leave to conduct a second deposition of plaintiff is **GRANTED**, contingent upon defendants making a showing regarding the need for additional deposition testimony based on plaintiff's failure to make timely disclosures. Plaintiff shall be made available for an additional day of deposition, on a future date to be set by defendants, **at plaintiff's expense**. See Zubulake, 229 F.R.D. at 437 (requiring

party to "pay the costs of any depositions or re-depositions" required by the party's late production). Plaintiff shall pay all costs of any renewed deposition the Court finds necessary, as well as reasonable attorneys' fees incurred by defendants in connection with the renewed deposition.

## V. Conclusion

As noted previously, "[f]ailure to comply fully with the Court's orders and deadlines may result in the imposition of sanctions, including financial sanctions, preclusion of evidence or claims, or dismissal or default." Doc. #182 at 14. Plaintiff's failure to meet his discovery obligations, failure to comply with the Court's Orders, and failure to simply make a concerted effort to obtain and disclose responsive documents at this stage in the proceedings warrants the imposition of sanctions. Throughout the course of jurisdictional discovery in this matter, plaintiff has repeatedly represented that all responsive documents had been produced, when in fact, complete searches were not conducted. Defendants' efforts at obtaining jurisdictional discovery have been repeatedly frustrated by plaintiff's counsel's contradictory representations, late and incomplete productions, and failure to oversee the searches and production of discovery.

The Court finds that defendants are entitled to costs and fees as a sanction for plaintiff's conduct. Counsel for the

defendants shall each file an affidavit of fees and costs with the Court, **on or before November 4, 2016,** showing the costs and fees incurred in connection with the filing of all notices and motions related to the instant discovery dispute, as well as the attendance at and participation in all court proceedings necessitated by plaintiff's conduct.

The Court also finds that it is appropriate, as a deterrent and an incentive, to impose additional monetary sanctions for each day that plaintiff's production of items in the custody of third parties continues to be deficient. **Accordingly, commencing October 27, 2016, for each business day that the plaintiff fails to produce either the materials sought or a certification that such materials are no longer in existence, plaintiff will be sanctioned $150.[4]** It is the Court's hope that this will encourage plaintiff to make a more concerted effort to provide the defendants with all responsive records currently in the possession of third parties. When plaintiff is confident that production has been completed in accordance with the Court's Orders, plaintiff shall file a status report that contains, as exhibits, copies of the requests made, a

---

[4] Plaintiff's Certification states that account information has been requested for the following institutions and companies: Citibank; Capital One; ABN Amro; Peoples' United Bank; Chase Card Services; Bank of America; Discover; Paypal; and the IRS. See Doc. #190 at 3. The legal file from Attorney Musilli – or a certification that no records exist – is also outstanding.

description of the efforts conducted to obtain the records, and a sworn certification, executed by both counsel and plaintiff personally, that all responsive records received have been provided to the defendants.

This is not a Recommended Ruling. This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" statutory standard of review. See 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.

SO ORDERED at New Haven, Connecticut, this 24th day of October, 2016.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
