# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| **DAN FRIEDMAN** | |
| **Plaintiff,** | Case No. 3:14-cv-00378 (AWT) |
| v. | |
| **STHREE PLC., et al.,** | |
| **Defendants.** | |

### STHREE DEFENDANTS' RESPONSE TO PLAINTIFF'S AMENDED OBJECTION TO SECOND APPLICATION FOR ATTORNEY'S FEES

In its October 24, 2016 Order re: Discovery (ECF Doc. 200, the "October 24 Order"), the Court imposed two different sanctions on Plaintiff—a daily sanction for each business day Plaintiff fails to complete his production, and an award of the attorney's fees and costs the Defendants incurred in connection with the instant discovery dispute. (Oct. 24 Order at 20-21). Plaintiff allocates the bulk of his opposition brief[1] to challenging the Court's decision to issue sanctions, but he failed to file any objections to the October 24 Order. As a result, his arguments regarding the Court's decision to issue sanctions are waived, and meritless in any event.

The sole issue here is the amount of fees to be awarded, and Plaintiff does not present any evidence or argument that any of the requested fees are unreasonable. Indeed, the one-half page that Plaintiff allocates to the amount of fees does not identify or challenge a single time entry. Plaintiff instead asks permission to depose opposing counsel to learn the "story" behind the fees. That request is entirely unjustified and should be denied. And since Plaintiff failed to challenge any of the requested fees, the SThree Defendants request that the full amount be awarded.

---

[1] While the SThree Defendants respond here to the amended version of the opposition brief (ECF Doc. 219, "Opp."), they object to Plaintiff's continued practice of unilaterally amending documents after the filing deadline.

### A. The Requested Fees Are Reasonable.

In accordance with the Court's October 24 Order, the SThree Defendants filed affidavits on November 4 "showing the costs and fees incurred in connection with the filing of all notices and motions related to the instant discovery dispute, as well as the attendance at and participation in all court proceedings necessitated by plaintiff's conduct." (Oct. 24 Order at 20-21). Attached to those affidavits were several dozen pages of invoices listing the precise work performed and fees charged in connection with the instant discovery dispute. (*See* ECF Docs. 206-1, 206-2).

The affidavits and invoices demonstrate that the requested fees are reasonable in amount and relate to the instant discovery dispute, which the SThree Defendants instituted and took the lead in pursuing following Plaintiff's failure to comply with the Court's August 11 deadline to produce all responsive documents.[2] The work performed included, among other things:

- Extensive correspondence with Plaintiff regarding ongoing deficiencies in his document production after August 11, 2016 (*see* ECF Docs. 157-1 to 157-6, 157-9);

- Filing a second notice of discovery dispute on September 6, 2016 (ECF Doc. 157);

- Preparing for and attending the September 16, 2016 status conference in which this discovery dispute was referred to Magistrate Judge Merriam (*see* ECF Doc. 168);

- Preparing for and attending the October 7, 2016 hearing regarding this discovery dispute, including responding to Plaintiff's last-minute motion to avoid bringing his computer (*see* ECF Docs. 174-176, 179-180);

- Reviewing the Court's October 7, 2016 Order regarding Plaintiff's further discovery obligations (ECF Doc. 182) and Plaintiff's October 17, 2016 Certification filed pursuant to that Order (ECF Doc. 190);

- Preparing the SThree Defendants' response to Plaintiff's Certification (ECF Doc. 193);

- Preparing for and attending the October 21, 2016 status conference regarding Plaintiff's Certification, including review of Plaintiff's response regarding his Certification (ECF Doc. 198); and

- Reviewing the Court's October 24, 2016 Order re: Discovery (ECF Doc. 200).

---

[2] The August 11 deadline was set following the SThree Defendants' first notice of discovery dispute. (*See* ECF Docs. 140, 145). As noted in the SThree Defendants' fee application, they have excluded fees and costs prior to August 11, although the instant discovery dispute extends back to at least July 19. (*See* ECF Doc. 206 at 1-2).

The documentation of this work, which Plaintiff concedes is "extensive" (Opp. at 12), satisfied the SThree Defendants' burden to submit "evidence supporting the hours worked and rates claimed" in their application for fees. *St. George v. Mak*, 2000 U.S. Dist. LEXIS 20365, *12 (D. Conn. Feb. 11, 2000), quoting *Hensley, v. Eckerhart*, 461 U.S. 424, 433 (1982).

Plaintiff has failed to present any contrary evidence or argument regarding the reasonableness any of the fees reflected in that documentation. Plaintiff summarily characterizes the amount of fees sought as "exorbitant," "unreasonable," and "remarkable." (Opp. at 12). But he refers only to the total amount of fees sought by both the SThree Defendants and the Palladyne Defendants, and offers no explanation, rationale, or examples of any fees that are supposedly unreasonable. Indeed, Plaintiff chose not to challenge a single time entry—he does not identify a single time entry in which the work was not related to the discovery dispute; he does not identify a single time entry in which the amount of time expended was unreasonable; and he does not challenge any of the billing rates of the timekeepers.

Plaintiff also fails to offer any explanation or argument as to why the total amount of fees is unreasonable. The total amount of fees reflects the consequences of Plaintiff's persistent, ongoing failure to meet his discovery obligations. As the Court observed:

> Throughout the course of jurisdictional discovery in this matter, plaintiff has repeatedly represented that all responsive documents had been produced, when in fact, complete searches were not conducted. Defendants' efforts at obtaining jurisdictional discovery have been repeatedly frustrated by plaintiff's counsel's contradictory representations, late and incomplete productions, and failure to oversee the searches and production of discovery.

(Oct. 24 Order at 20). This pattern continues to this day—Plaintiff has still not completed the discovery that the Court ordered over two months ago, despite the SThree Defendants' efforts to identify the ongoing deficiencies. (*See* Correspondence attached to Palladyne's Motion for Additional Sanctions, ECF Doc. 224).

Finally, Plaintiff makes a passing reference to questioning the "cost/benefit" of the work performed. (Opp. at 12). Plaintiff did not elaborate on this aside, but to the extent Plaintiff intended to argue that the amount of fees sought is unreasonable in light of the results obtained, his argument is improper and incorrect. As discussed below, Plaintiff mischaracterizes both the amount of documents produced as a result of the SThree Defendants' discovery dispute and the relevance of the information in those documents. Moreover, the ultimate legal impact of the documents is not the issue here—that will be addressed through the dismissal briefing. The issue here is the amount of sanctions to impose for Plaintiff's failure to comply with the Court's Order to produce relevant and responsive documents. If Plaintiff believed that any particular fees were unnecessary or did not relate to the instant discovery dispute, he had the opportunity to challenge them. He chose not to do so. The SThree Defendants therefore respectfully request that the Court award the full amount of $53,555.52 in attorneys' fees and costs.

**B.     Plaintiff's Request To Depose Opposing Counsel Should Be Denied.**

Instead of challenging the requested fees, Plaintiff asserts that he needs to depose opposing counsel because "[t]ime records do not always yield a complete story of the rationale for what has been done." (Opp. at 12). Plaintiff's request to depose opposing counsel is entirely unjustified and should be denied.

"[C]ourts have looked askance at deposing attorneys, viewing them with tremendous disfavor and discouragement. Indeed, it is greatly frowned upon and rarely justified." *Fountain v. United States*, 2014 U.S. Dist. LEXIS 141194, *8 (N.D.N.Y. Sept. 30, 2014) (citation omitted). Particularly in the context of fee awards, courts have rejected attempts to depose opposing counsel absent extraordinary circumstances because "a request for attorney's fees should not result in a second major litigation." *Wachovia Bank v. Tien*, 2015 U.S. Dist. LEXIS 178364, *9 (S.D. Fla. Apr. 7, 2015) (denying request to depose counsel in fee award), quoting, inter alia,

*Hensley*, 461 U.S. at 437. *See also United States Liab. Ins. Co v. Goldin Metals, Inc.*, 2012 U.S. Dist. LEXIS 4881, *4-6 (S.D. Miss. Jan. 17, 2012) (quashing deposition of counsel regarding fees); *Woodward v. Acceptance Indem. Ins. Co.*, 2011 U.S. Dist. LEXIS 160058, *6 (S.D. Miss. Dec. 7, 2011) (denying request to depose counsel regarding fees because party "failed to demonstrate that the information it seeks cannot be obtained from the billing statements").

Plaintiff has offered no justification here for his extraordinary request to depose opposing counsel. To the contrary, he acknowledged that the Defendants submitted "extensive documentation" of the fees sought (Opp. at 12), and he has not identified any entries that are vague or otherwise insufficient to assess what work was performed, how much time was spent, and what fees were charged. Plaintiff's blanket, unsupported request to depose opposing counsel to learn the "story" behind the fees that are shown on the submitted invoices would needlessly exacerbate the delay and cost of resolving this discovery dispute, and should be denied.

      **C.**    **Plaintiff's Attacks On The Court's Decision To Issue Sanctions Are Untimely And Meritless.**

Plaintiff spends the bulk of his brief challenging the Court's underlying decision to award sanctions. If Plaintiff wanted to raise these issues, he was required to file objections within 14 days of the October 24 Order pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72.2. Plaintiff did not do so, and thus his arguments regarding the propriety of sanctions are untimely and waived. Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to."); Local R. 72.2(a) ("A party may not thereafter assign as error a defect in the Magistrate Judge's order to which objection was not timely made.").

Even if Plaintiff had properly raised these arguments, they would have no merit. The Court was authorized to issue sanctions and did so appropriately due to Plaintiff's ongoing failure or refusal to comply with the Court's Orders.

**Notice.**  Plaintiff suggests that he was not warned that his continued failure to comply with the Court's Orders could result in sanctions, and that as a result he was not able to address the Court's concerns that gave rise to sanctions.  (Opp. at 8, 13-14).  But the Court's October 7 Order clearly stated:  "Failure to comply fully with the Court's orders and deadlines may result in the imposition of sanctions, including financial sanctions, preclusion of evidence or claims, or dismissal or default."  (ECF Doc. 182 at 14).  Furthermore, Plaintiff had many opportunities to present his views regarding the course of discovery in this case, including four different briefs (ECF Docs. 160, 162, 190, 198); three status conferences (August 16, October 13, and October 21), and the October 7 hearing.

To the extent Plaintiff believes he was entitled to a more formalized warning prior to the issuance of sanctions, he is wrong.  Indeed, the first case Plaintiff cites regarding notice states: "the requirements of due process cannot be cabined within an inflexible regime, and must vary with each case.  Thus, in the Rule 37 context, we have declined to impose rigid requirements on either the timing or the form of the notice afforded to a sanctioned party."  *Reilly v. NatWest Markets Group, Inc.*, 181 F.3d 253, 270 (2d Cir. 1999).[3]  Here, the Court provided Plaintiff with notice that failure to comply with its Orders could result in sanctions, and that is precisely what happened.  Plaintiff cannot claim to be surprised at that result or that he did not have an adequate opportunity to present his views as to why sanctions were not warranted.

---

[3] The quote that precedes this citation in Plaintiff's brief does not appear anywhere in the opinion. The other cases Plaintiff cites are inapposite.  Two of them addressed sanctions under 18 U.S.C. § 1927.  *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997) (noting "[i]f Rule 11 and § 1927 sanctions were identical in all respects, 'particularized notice as to one sanction would arguably suffice to fully inform [counsel] as to the pendency of the other sanction.' But those two sections are not identical.") (citations omitted); *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 335 (2d Cir. 1999) (finding sufficient notice where motion cited Rule 11 and § 1927).  The fourth case did not require any formalized notice and upheld a contempt sanction and default judgment for failure to comply with a court order.  *See Southern New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144-149 (2d Cir. 2010).

**Prejudice.**   Plaintiff argues that Defendants were not prejudiced by his discovery deficiencies because he has produced only a few additional documents with little bearing on jurisdiction. (Opp. at 8-10). Prejudice to the opposing party is not required to impose sanctions. *Southern New Eng. Tel. Co.*, 624 F.3d at 148 ("Even if SNET had suffered no prejudice from Global's conduct, however, we, along with the Supreme Court, have consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions that Global would have us apply."). But Plaintiff's actions here have prejudiced the SThree Defendants by requiring them to spend considerable time and resources to obtain discovery that is directly relevant to jurisdiction.

Plaintiff's argument mischaracterizes the amount of documents that he failed to produce prior to the August 11 deadline that the Court set for Plaintiff to complete his production (and which triggered the instant discovery dispute). (*See* ECF Doc. 145). Plaintiff refers to producing "9 documents" (Opp. at 7, 9), but he has actually produced over 1,000 pages[4] since August 11, and he still has yet to complete his production.

Plaintiff also mischaracterizes the relevance of the information produced after the August 11 deadline. The SThree Defendants will formally submit the jurisdictional evidence with their motion to dismiss, and the documents Plaintiff produced after August 11 will be a significant component of that motion. That post-August 11 evidence shows, for example, that Plaintiff did not return to Connecticut until after the Defendants filed their motions to dismiss for lack of jurisdiction; that Plaintiff obtained a Dutch social security number and Dutch residence permit (directly contradicting his affidavit to this Court); that Plaintiff expressed a preference to live in Amsterdam and sought work in numerous European cities (demonstrating that he had no definite

---

[4] The bates number of the last page Plaintiff produced on August 11 is 1762; the last bates number as of today is 2921.  However, Plaintiff has repeatedly produced documents without bates numbers, and thus the bates numbers do not correspond to the actual number of pages produced.

intent to return to Connecticut); that Plaintiff disassociated himself from his house, belongings, and financial accounts in the U.S. in order to continue his life in Amsterdam; that Plaintiff had the financial ability to return to Connecticut at any time prior to filing his Complaint; that Plaintiff moved to a new apartment in Amsterdam at nearly the same time that he filed his Complaint in this action; and that Plaintiff made no preparations to wind up his affairs in Amsterdam before his rushed trip to Connecticut to try to manufacture jurisdiction. But for the SThree Defendants' notice of discovery dispute, this evidence would not have come to light.

In an attempt to downplay the importance of the financial documents he has belatedly produced, Plaintiff cites two passages from his deposition. (*See* Opp. at 10; ECF Doc. 219-1 at 21-26). But those examples undermine Plaintiff's argument. The first excerpt involves a discussion of when Plaintiff cancelled his bicycle insurance in Amsterdam. Plaintiff claimed to have an "extremely firm and clear recollection" that he did this before leaving. (ECF Doc. 219-1 at 21). It was only after reviewing his financial records and related communications that he admitted he did not cancel his insurance until months after he left Amsterdam. (*Id.* at 21-24). Plaintiff's failure to wind up any of his affairs before leaving (as shown here and in other evidence) is relevant to jurisdiction because it reflects that Plaintiff made a rushed trip to Connecticut (at his attorney's expense) in an attempt to manufacture a colorable argument that he retained his Connecticut domicile—not as part of any pre-existing plan to return.

The second deposition excerpt that Plaintiff cites relates to Plaintiff's alcohol purchases both before and during his time in Amsterdam. (*See* ECF Doc. 219-1 at 26). This was briefly addressed as a result of Plaintiff's inability to recall many details about his life in the Netherlands—meaning that his financial records are often the only available record of what he did for nearly three years and what he was doing at the time he filed the Complaint. Indeed,

those financial records are the only reason Defendants learned that in or around the month that Plaintiff filed his Complaint, he moved to a new apartment in Amsterdam rather than returning to Connecticut. (*See* ECF Doc. 224-8 at 13-14).[5] While Plaintiff is free to dispute the ultimate legal effect of the documents at issue, his efforts to avoid disclosing those documents are absolutely prejudicial.

**Good Faith/Substantial Compliance.** Finally, Plaintiff argues that sanctions are not warranted because he has substantially complied with the Court's Orders and pursued discovery in good faith. (Opp. at 5-9, 11). Plaintiff's argument cannot be sustained in light of his pattern of late and incomplete productions, unfulfilled promises of compliance, and contradictory representations—which the Court addressed in detail in its October 24 Order, and the SThree Defendants addressed in many prior filings (*see, e.g.*, ECF Docs. 106, 109, 140, 157, 193).

That pattern continues to this day. Nearly 12 weeks have passed since the Court's October 7 Order, and yet Plaintiff has still not completed the production that the Court Ordered. As reflected in the parties' correspondence, Plaintiff has yet to produce records for several financial accounts; the records that he has produced for other accounts are incomplete; he has not produced the required IRS records; and he has not produced the missing email attachments that counsel has identified[6]. (*See* Correspondence attached to Palladyne's Motion for Additional

---

[5] The financial documents also reflect that Plaintiff was able to afford a comfortable lifestyle for nearly three years in Amsterdam despite being unemployed at the time—undercutting Plaintiff's argument that sanctions are "futile" due to Plaintiff's unemployment. (Opp. at 2, 16; *see also* ECF Doc. 224-8 at 13-14 (deposition transcript discussing rent payments)). Moreover, Plaintiff is not unemployed—he is employed by his attorney. (*See* Oct. 7 Transcript, Exhibit A, at 99).

[6] During Plaintiff's deposition, SThree's counsel inquired about one of the email attachments that had not been produced. (*See* ECF Doc. 219-1 at 23-24). Both Plaintiff and his counsel responded that the attachment was not produced because it did not exist. (*Id.* at 23). Yet when Plaintiff's counsel actually looked for the attachment on his computer (as the questioning continued), he was able to quickly find it. (*Id.* at 24). The only plausible reason why this document was not previously produced is because neither Plaintiff nor his counsel looked for it.

Sanctions, ECF Doc. 224). It is unclear if or when Plaintiff may complete his production, as the SThree Defendants re-forwarded their list of deficiencies to Plaintiff's counsel on December 6 and have received no response. (*See* ECF Doc. 224-2). Plaintiff's continuing pattern of non-compliance forecloses his claims of good faith and substantial compliance, and confirms that the Court was entirely justified in imposing sanctions.

## CONCLUSION

Plaintiff has not identified any unreasonable fees or costs in the SThree Defendants' fee application, and his challenges to the Court's decision to issue sanctions are untimely and meritless. Accordingly, the SThree Defendants respectfully seek an award of $53,555.52 in attorney's fees and costs.

Respectfully submitted,

*/s/Christopher Haas*

| | |
|---|---|
| Aneca E. Lasley (phv06937) | Jeffrey J. Mirman, Esq. |
| Christopher Haas (phv06934) | Federal Bar No. ct05433 |
| Joseph P. Ashbrook (phv06933) | HINCKLEY, ALLEN & SNYDER, LLP |
| SQUIRE PATTON BOGGS (US) LLP | 20 Church Street, 18th Floor |
| 2000 Huntington Center | Hartford, CT  06103 |
| 41 South High Street | Tel: (860) 725-6200 |
| Columbus, OH  43215 | Fax: (860) 278-3802 |
| Telephone:  614-365-2700 | jmirman@hinckleyallen.com |
| Facsimile:  614-365-2499 | |
| Email:  aneca.lasley@squirepb.com | |
| Email:  christopher.haas@squirepb.com | |
| Email:  joseph.ashbrook@squirepb.com | |

*Attorneys for Defendants SThree Plc., SThree Inc., Huxley Associates B.V., Huxley Associates Ltd., Huxley Associates Inc., and Ivana Radujko*

## CERTIFICATE OF SERVICE

On December 30, 2016, this document was filed electronically with the Clerk of the United States District Court for the District of Connecticut, which will electronically serve a copy of the foregoing on all counsel of record for all parties.

*/s/ Christopher Haas*
Christopher Haas (phv06934)
Attorney for the SThree Defendants