```
-----------------------------x
                             :
DAN FRIEDMAN                  :    Civil No. 3:14CV00378(AWT)
                             :
v.                           :
                             :
STHREE PLC., et al.          :    September 15, 2017
                             :
-----------------------------x
```

### RULING RE: ATTORNEYS' FEES, COSTS, AND SANCTIONS

Pending before the Court are several motions and applications for attorneys' fees and costs by defendants SThree PLC., SThree Inc., Huxley Associates Ltd., Huxley Associates Inc., Huxley Associates B.V., and Ivanka Radujko (the "SThree defendants"); and by defendants Palladyne International Asset Management B.V., Ismael Abudher, Lily Yeo, Nikolay Tischchenko, Piedad Alonso Gamo, and Bill Stevens (the "Palladyne defendants"). For the reasons set forth herein, the Court **GRANTS, in part**, SThree Defendants' Second Application for Attorney's Fees **[Doc. #206]; GRANTS, in part**, Palladyne Defendants' Application for Attorney's Fees and Costs **[Doc. #205];** and **GRANTS, in part**, Palladyne Defendants' Motion to Increase Daily Sanction and for Other Relief **[Doc. #225]**.[1]

---

[1] The Palladyne defendants filed both a redacted motion, [Doc. #224], and an unredacted motion, under seal. [Doc. #225]. The Court's references in this Order are to the sealed motion. The Court hereby terminates Doc. #224 as moot, in light of its Ruling on Doc. #225.

## I. BACKGROUND

The Court presumes familiarity with the background and procedural history of this matter, and thus only discusses information that is necessary to resolution of the motions and applications before it.

On June 17, 2016, Judge Alvin W. Thompson entered an order setting out the plan for jurisdictional discovery. See Doc. #121. The parties were instructed by Judge Thompson to file a notice with the Court immediately upon becoming aware of a discovery dispute, rather than filing a motion to compel or for a protective order. See Doc. #121 at 2. The Order requires each side to "summarize its position in no more than two pages," and states that "the court will hold a telephonic status conference to resolve the dispute." Id. (emphasis omitted).

On September 6, 2016, the SThree defendants filed a Notice of Second Discovery Dispute. See Doc. #157. The Notice asserted that plaintiff's jurisdictional discovery production was deficient; that plaintiff's representations about existing discovery were "materially incorrect;" and that the searches that plaintiff had conducted for responsive documents were "insufficient and not reasonably calculated to identify all responsive documents." Id. at 2. Attached to the Notice were communications between counsel for plaintiff and the defendants,

defendants' discovery requests, and a portion of plaintiff's responses. See generally Doc. #157-1 through Doc. #157-9.

Plaintiff filed a response to the SThree defendants' Notice on September 12, 2016. See Doc. #160. Plaintiff stated that he had "no objection to producing the limited number of items subject to the SThree defendants' filing." Id. at 2 (footnotes omitted). He argued that defendants received timely responses to their discovery requests, and that reasonable searches had been conducted. See id. Plaintiff responded to each asserted deficiency arguing that all responsive documents had been produced, and "if additional documents are located they will be produced." Id. at 2-4. Plaintiff filed a Supplemental Submission in Opposition on September 14, 2016, noting that additional searches had been conducted and additional documents had been produced. See Doc. #162.

On September 16, 2016, Judge Thompson referred this matter to the undersigned to conduct a discovery conference regarding the dispute. See Docs. #168, Doc. #169. The Court held an in-person conference on October 7, 2016, and issued an Order that same day requiring plaintiff "to perform additional searches; to review the results of each search; to provide a certification detailing the nature of each search; and to identify any records that have not been produced on the basis of privilege in a privilege log[.]" Doc. #182 at 2. The Court imposed a deadline

for these additional searches and production. Following two telephonic status conferences and after review of defendants' responses to plaintiff's certification, and review of plaintiff's response, on October 24, 2016, the Court found that "plaintiff has failed to adequately respond to the defendants' discovery requests and to comply with the Court's orders, and that sanctions are therefore appropriate." Doc. #200 at 3. The Court ordered counsel for defendants to "file an affidavit of fees and costs with the Court ... showing the costs and fees incurred in connection with the filing of all notices and motions related to the instant discovery dispute, as well as the attendance at and participation in all court proceedings necessitated by plaintiff's conduct." Id. at 21.

Plaintiff did not file an objection to the Court's Order.[2] On November 4, 2016, the Palladyne defendants and the SThree defendants each filed applications for attorneys' fees and costs. See Doc. #205, Doc. #206. On December 9, 2016, plaintiff

---

[2] Any objection to the Court's order would have had to be filed within fourteen days of October 24, 2016. See D. Conn. L. R. 72.2(a). "A party may not thereafter assign as error a defect in the Magistrate Judge's order to which objection was not timely made." Id.; see also Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.").

filed a Memorandum in Opposition to defendants' fee applications, see Doc. #217, and on December 14, 2016, plaintiff filed an Amended Memorandum in Opposition.[3] Doc. #219. On December 23, 2016, the Palladyne defendants filed a reply to plaintiff's objection, see Doc. #223, and on December 30, 2016, the SThree defendants filed a reply. See Doc. #226.

## II.    LEGAL STANDARD

### A.    Rule 37 Sanctions

"[S]anctions for discovery abuses are imposed pursuant to Rule 37." Doe v. Mastoloni, 307 F.R.D. 305, 311 (D. Conn. 2015) (citation omitted). "The mildest sanction [available under Rule 37] is the reimbursement of expenses to the opposing party caused by the offending party's failure to cooperate, while the harshest sanction is the order of dismissal and default judgment." Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 179 F.R.D. 77, 80 (D. Conn. 1998) (citation omitted).

> Disciplinary sanctions under Rule 37 are intended to serve three purposes. First, they ensure that a party will not benefit from its own failure to comply. Second,

---

[3] Plaintiff's Amended Opposition was filed without leave of Court. Plaintiff noted that the opposition was amended because the original opposition papers "did not include exhibits and references." Doc. #219 at 1 n.1. However, a comparison of the two documents reveals that there were multiple substantive changes made as well. See Doc. #220-3 (redline comparison of Doc. #217 and Doc. #219). While the Court does not condone this behavior, it notes that the defendants had an opportunity to respond to the amended opposition, and therefore no prejudice resulted from plaintiff's untimely, amended submission. Accordingly, the Court will consider plaintiff's Amended Opposition in ruling on the motions before it.

they are specific deterrents and seek to obtain
compliance with the particular order issued. Third, they
are intended to serve a general deterrent effect on the
case at hand and on other litigation, provided that the
party against whom they are imposed was in some sense at
fault.

Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 71 (2d Cir.

1988) (citations omitted).

Pursuant to Rule 37(a), if a motion to compel "is granted

-- or if the disclosure or requested discovery is provided after

the motion was filed -- the court must, after giving an

opportunity to be heard, require the party or deponent whose

conduct necessitated the motion, the party or attorney advising

that conduct, or both to pay the movant's reasonable expenses

incurred in making the motion, including attorney's fees." Fed.

R. Civ. P. 37(a)(5)(A). However, the Court "must not order this

payment if: (i) the movant filed the motion before attempting in

good faith to obtain the disclosure or discovery without court

action; (ii) the opposing party's nondisclosure, response, or

objection was substantially justified; or (iii) other

circumstances make an award of expenses unjust." Id.; see also

Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr.

Servs., Inc., 318 F.R.D. 28, 43 (S.D.N.Y. 2016) ("If a court

grants a motion to compel, it must, after giving an opportunity

to be heard, impose the moving party's reasonable expenses

incurred in making the motion on the party who created the need

for the motion, unless the nondisclosure was substantially

justified or other circumstances make such an award unjust."
(quotation marks and citation omitted)).

Rule 37(b) provides that if a party "fails to obey an order
to provide or permit discovery," the "court must order the
disobedient party, the attorney advising that party, or both to
pay the reasonable expenses, including attorney's fees, caused
by the failure, unless the failure was substantially justified
or other circumstances make an award of expenses unjust." Fed.
R. Civ. P. 37(b)(2)(A)-(C); see also Martinelli, 179 F.R.D. at
80 (noting that Rule 37 "provides a non-exclusive list of
sanctions that may be imposed on a party for failing to obey an
order to provide or permit discovery" (citation omitted)).
"Provided that there is a clearly articulated order of the court
requiring specified discovery, the district court has the
authority to impose Rule 37(b) sanctions for noncompliance with
that order." Tucker v. Am. Int'l Grp., Inc., 936 F. Supp. 2d 1,
26 (D. Conn. 2013) (quoting Daval Steel Prods., a Div. of
Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir.
1991)). Rule 37(b) "requires that the sanctions must be just;
and the sanction must relate to the particular claim to which
the discovery order was addressed." Id. at 1366 (citation
omitted).

"A district court has wide discretion to impose sanctions,
including severe sanctions, under Federal Rule of Civil

Procedure 37[.]" Design Strategy, Inc. v. Davis, 469 F.3d 284, 294 (2d Cir. 2006); see also Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 267 (2d Cir. 1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses."). "Monetary sanctions pursuant to Rule 37 for noncompliance with discovery orders usually are committed to the discretion of the magistrate [judge], reviewable by the district court under the clearly erroneous or contrary to law standard." Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990) (quotation marks and citations omitted). "Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent." Roadway Exp., Inc. v. Piper, 447 U.S. 752, 763–64 (1980) (quotation marks and citation omitted); see also S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 149 (2d Cir. 2010) (noting that sanctions may be justified even when "a party finally (albeit belatedly) complies with discovery orders after sanctions are imposed" (citation omitted)).

**B.   Attorney's Fees**

An award of attorney's fees pursuant to Rule 37 is calculated "according to the lodestar formula, in which the number of hours spent by the attorneys is multiplied by the

hourly rate normally charged for similar work by attorneys of like skill in the area." Bowne of New York City, Inc. v. AmBase Corp., 161 F.R.D. 258, 266 (S.D.N.Y. 1995) (quotation marks and citations omitted); see also Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, 188 F. Supp. 3d 333, 337 (S.D.N.Y. 2016) (determining that the lodestar is the presumptively reasonable fee in determining the amount of attorneys' fees and costs warranted in connection with a motion for sanctions); Rahman v. The Smith & Wollensky Rest. Grp., Inc., No. 06CV6198(LAK), 2008 WL 1899938, at *2 (S.D.N.Y. Apr. 29, 2008) ("As with the award of statutory attorneys' fees to a party that prevails on the merits, an award of fees as a sanction for discovery abuse begins with a lodestar analysis." (citations omitted)).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The resulting amount "is only presumptively reasonable; it is still within the court's discretion to adjust the amount upward or downward based on the case-specific factors." Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc., No. 3:10CV60(JBA), 2012 WL 4092515, at *1 (D. Conn. Sept. 17, 2012) (quotation marks and citation omitted). "Hence, the process is really a four-step one, as the

court must: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award." Adorno v. Port Auth. of New York & New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010).

"The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (quotation marks and citation omitted). Factors that the Court may consider in determining a reasonable fee are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015) (citations omitted).

"The district court retains discretion to determine what constitutes a reasonable fee." Millea v. Metro-N. R.R. Co., 658

F.3d 154, 166 (2d Cir. 2011) (quotation marks and citation omitted). "However, this discretion is not unfettered," and "the district court must abide by the procedural requirements for calculating those fees articulated by [the Second Circuit] and the Supreme Court." Id. "Attorney's fees must be reasonable in terms of the circumstances of the particular case[.]" Alderman v. Pan Am World Airways, 169 F.3d 99, 102 (2d Cir. 1999) (citation omitted). In determining a reasonable fee, the Court is mindful that "attorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." Tsombanidis v. City of W. Haven, 208 F. Supp. 2d 263, 270 (D. Conn. 2002) (quotation marks and citation omitted), aff'd sub nom. Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565 (2d Cir. 2003); see also New York State Assoc. for Retarded Children v. Carey, 711 F.2d 1136, 1139 (2d Cir. 1983).

**III. DISCUSSION**

The Court will address the reasonableness of the hours and rates sought in each defendants' pending fee applications, but turns first to plaintiff's opposition to the fee applications.

In his response to the defendants' applications, plaintiff primarily challenges the Court's original order, contending that the sanctions imposed were unwarranted and that plaintiff was not afforded due process. See Doc. #219 at 2-3. Plaintiff also

argues that the fees claimed by the defendants are excessive and cannot fairly be imposed on plaintiff. See id. The Court has already determined that an award of attorneys' fees is proper in this instance, and no timely objection or motion to reconsider was filed. Accordingly, the Court will not revisit that issue. However, the Court will briefly address plaintiff's due process argument.

"Before imposing sanctions, the court must afford the person it proposes to sanction due process, i.e., notice and opportunity to be heard." Mickle v. Morin, 297 F.3d 114, 126 (2d Cir. 2002) (quotation marks and citation omitted). "At a minimum, this means that the delinquent party be provided with notice of the possibility that sanctions will be imposed and with an opportunity to present evidence or arguments against their imposition." Yong Kui Chen v. Wai Yin Chan, 615 F. App'x 10, 12 (2d Cir. 2015) (quotation marks and citations omitted). However, "[a]s a general rule, a court is not obliged to give a formal warning that sanctions might be imposed for violation of the court's orders." Fonar Corp. v. Magnetic Resonance Plus, Inc., 128 F.3d 99, 102 (2d Cir. 1997) (citation omitted); see also Daval Steel Prod., 951 F.2d at 1366 ("Parties and counsel have no absolute entitlement to be 'warned' that they disobey court orders at their peril."). "[I]n the Rule 37 context, [the Second Circuit has] declined to impose rigid requirements on

either the timing or the form of the notice afforded to a sanctioned party." Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 270 (2d Cir. 1999) (citation omitted).

Here, plaintiff was provided: An opportunity to respond to defendants' notices of deficiencies; an opportunity to be heard at the Court's October 7, 2016, hearing during which the Court specifically noted that it assumes "that there will be a motion for sanctions coming," Doc. #200 at 69, and that the cost of continuing to conduct searches until there has been satisfaction "will not be borne by defendant[s]," Id. at 34; notice of the Court's October 7, 2016, Order in which the Court stated: "Failure to comply fully with the Court's Orders and deadlines may result in the imposition of sanctions, including financial sanctions, preclusion of evidence or claims, or dismissal or default," Doc. #182 at 14; an opportunity to object to the Court's October 7, 2016, Order; an opportunity to be heard both at the October 13, 2016, and the October 21, 2016, conferences; notice of the Court's October 24, 2016, Order stating that "[m]onetary sanctions will be imposed at this time. ... Failure to comply in the future will result in additional sanctions," Doc. #200 at 13-14, and that the Court "finds that defendants are entitled to costs and fees as a sanction for plaintiff's conduct," and inviting counsel for defendants to file an affidavit of fees and costs with the Court, Doc. #200 at 21; an

opportunity to object to the Court's October 24, 2016, Order; an opportunity to object to the reasonableness of defendants' fee applications; an opportunity to object to defendants' Rule 37 motions for additional sanctions; notice of the Court's May 17, 2017, Order to Show Cause; and an opportunity to respond to said Order. In light of the abundant notice that sanctions could be imposed, and the ample opportunity to be heard, the Court finds that plaintiff's due process rights have been protected.

Turning to the amount of the award, the Court will address the defendants' applications in turn.

## A. The SThree Defendants' Second Application for Attorneys' Fees [Doc. #206]

The SThree defendants have submitted an application seeking an award of $52,272.00 in attorneys' fees and $1,283.52 in costs, reflecting 157.5 hours of work performed by four attorneys, a law clerk, a litigation support specialist and a paralegal on the instant discovery dispute. After careful review, the Court adjusts the fee award and costs as set forth below.

### 1. *Hourly Rate*

The Court addresses first the hourly rates requested by the SThree defendants' counsel. Determination of an appropriate hourly rate "contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and

skill to the fee applicant's counsel." <u>Farbotko v. Clinton Cty.</u>
<u>of New York</u>, 433 F.3d 204, 209 (2d Cir. 2005). The Court may
take "judicial notice of the rates awarded in prior cases and
the court's own familiarity with the rates prevailing in the
district." <u>Id.</u> (collecting cases). This determination "also
requires an evaluation of evidence proffered by the parties."
<u>Id.</u>

"According to the forum rule, courts should generally use
the hourly rates employed in the district in which the reviewing
court sits in calculating the presumptively reasonable fee."
<u>Simmons</u>, 575 F.3d at 174 (quotation marks and citations
omitted); <u>see also</u> <u>Congregation Rabbinical Coll. of Tartikov,</u>
<u>Inc.</u>, 188 F. Supp. 3d at 338 ("A reasonable hourly rate is based
on the current prevailing market rate for lawyers in the
district in which the ruling court sits." (quotation marks and
citation omitted)). Thus,

> when faced with a request for an award of higher out-
> of-district rates, a district court must first apply a
> presumption in favor of application of the forum rule.
> In order to overcome that presumption, a litigant must
> persuasively establish that a reasonable client would
> have selected out-of-district counsel because doing so
> would likely (not just possibly) produce a substantially
> better net result.

<u>Simmons</u>, 575 F.3d at 175. "Mere proximity of the districts and
brand name or prestige of the attorneys will not overcome the
presumption. The party seeking the award must make a
particularized showing that the selection of counsel was based

on experience and objective factors <u>and</u> that use of in-district counsel would produce a substantially inferior result." <u>CSL Silicones, Inc. v. Midsun Grp. Inc.</u>, No. 3:14CV01897(CSH), 2017 WL 1399630, at *4 (D. Conn. Apr. 18, 2017) (citations omitted).

Two attorneys performed the majority of work on the instant discovery dispute: Aneca E. Lasley, a partner at Squire Patton Boggs in Columbus, Ohio, and Christopher F. Haas, a senior associate at the same firm. <u>See</u> Doc. #206-1 at 2-3. Attorney Lasley graduated from law school in 2000. <u>See</u> <u>id.</u> at 2. She practices complex commercial litigation, and also serves as the Firmwide Hiring Chair and as the Columbus Office Hiring Partner. <u>See</u> <u>id.</u> at 3. She bills at a rate of $495 per hour for this matter. <u>See</u> <u>id.</u> Attorney Haas graduated from law school in 2005, and also practices complex commercial litigation. <u>See</u> <u>id.</u> His billing rate in this matter is $315 per hour. <u>See</u> <u>id.</u> Counsel contends that these hourly rates are "reasonable and are consistent with the prevailing rates charged in the Columbus market for similarly complex civil litigation." <u>Id.</u> at 4.

The Court's survey of fee awards reveals that the SThree defendants' hourly rates are higher than those awarded for comparable services by attorneys in this District. <u>See, e.g.</u>, <u>Trustees of the I.B.E.W. Local Union No. 488 Pension Fund v. Norland Elec., Inc.</u>, No. 3:11CV709(CSH), 2015 WL 3581011, at *5

(D. Conn. June 5, 2015) (finding $250 a reasonable rate for an attorney with 14 years of experience practicing ERISA law); Crawford v. City of New London, No. 3:11CV1371(JBA), 2015 WL 1125491, at *3 (D. Conn. Mar. 12, 2015) (noting that "an examination of more recent attorneys' fees awards in this district demonstrates that $450/hour is on the high end and is generally reserved for particularly distinguished attorneys successfully taking on difficult or novel cases" (collecting cases)); Rousseau v. Morris, No. 3:11CV01794(SRU), 2014 WL 941476, at *1 (D. Conn. Mar. 11, 2014) (finding $350 a reasonable hourly rate for a nationally-recognized attorney with over 35 years' experience litigating consumer matters); Parris v. Pappas, 844 F. Supp. 2d 262, 266 (D. Conn. 2012) (finding $275 per hour a reasonable rate for an attorney with more than eleven years of legal experience); Valley Hous. Ltd. P'ship v. City of Derby, No. 3:06CV1319(TLM), 2012 WL 1077848, at *6 (D. Conn. Mar. 30, 2012) (finding $400 per hour a reasonable rate for a civil rights attorney with thirty years of experience, and $350 per hour reasonable for an attorney with twenty-five years of civil rights law experience); Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth., No. 3:03CV599(CFD), 2011 WL 721582, at *5 (D. Conn. Feb. 22, 2011) (finding $325 per hour a reasonable rate for a partner with eighteen years of

experience, and $275 per hour reasonable for senior associates with more than eight years of experience).

Counsel for the SThree defendants do not argue any grounds to overcome the presumption in favor of the application of the forum rule. Nothing in defendants' application indicates that work on this matter required any particular specialization or resources that could not be provided by counsel in this District. See Innis Arden Golf Club v. Bowes, No. 3:06CV1352(JBA), 2012 WL 1108527, at *3 (D. Conn. Mar. 30, 2012) (noting that overcoming the forum rate presumption "requires a showing of subject matter specialization or law firm resources needed for the particular case which Connecticut firms could not adequately provide"). Indeed, counsel for the SThree defendants have not made any showing, let alone a particularized showing, that their clients selected them over local counsel based on their experience and other objective factors, and that the use of local counsel would have produced a "substantially inferior result." Simmons, 575 F.3d at 176.

Accordingly, as defendants have not presented evidence sufficient to overcome the presumption in favor of the forum rule, the Court reduces Attorney Lasley's rate to $375 per hour and Attorney Haas' rate to $275 per hour, rates that the Court finds are reasonable for this District in light of counsel's experience.

The SThree defendants also request fees for time that Attorney Joseph P. Ashbrook spent on this matter. Attorney Ashbrook is an associate at Squire Patton Boggs, and graduated from law school in 2013. See Doc. #206-1 at 3. He bills at a rate of $240 an hour. See id. The Court hereby reduces Attorney Ashbrook's rate to $200 per hour, which is in accordance with a reasonable hourly rate for an attorney with comparable experience in this District. See Schuman v. Aetna Life Ins. Co., No. 3:15CV1006(SRU), 2017 WL 2662191, at *9 (D. Conn. June 20, 2017) (finding $200 per hour an appropriate rate for a first or second year associate); Parris, 844 F. Supp. 2d at 267 (finding $200 per hour a reasonable rate for an attorney with four years of legal experience).

Local counsel for the SThree defendants, Attorney Mirman, also seeks payment for his time spent on this discovery dispute; he bills at $470 per hour. See Doc. #206-2 at 2-3. Attorney Mirman graduated from law school in 1978, and was admitted to practice in the District of Connecticut in 1979. See id. at 3. No additional information is provided as to his expertise, specialization or experience. See id. Although Attorney Mirman has been practicing law for close to forty years, there is no assertion made that Attorney Mirman's years of experience were of special value in this matter in his role as local counsel. The Court therefore reduces his hourly rate to $400 per hour.

Local counsel for the SThree defendants requests a rate of $160 per hour for Jo A. Rosinski, a paralegal. See id. No information is provided about Ms. Rosinski's experience. Ms. Rosinki's rate is reduced to $150 per hour, in accord with the rate that is generally awarded in this District for the work of paralegals. See KX Tech LLC v. Dilmen LLC, No. 3:16CV00745(CSH), 2017 WL 2798248, at *9 (D. Conn. June 28, 2017) (awarding $150 per hour for paralegal work, noting that rate is "commensurate with the hourly rates typically awarded for the work of paralegals in this District" (collecting cases)).

The SThree defendants also request fees for work performed by India Scarver, a law clerk, at $205 per hour, and for Kelly L. Guthleben, a litigation support specialist, at $215 per hour. See Doc. #206-1 at 3-4. The SThree defendants do not provide any information to assist the Court in determining what responsibilities Ms. Scarver and Ms. Guthleben have and whether their work is more akin to that of a paralegal or that of an attorney. Ms. Scarver graduated from law school in 2016; the Court assumes that, based on her title, she had not yet been admitted to practice law at the time this work was performed. No information is provided about Ms. Guthleben's experience or background. From a review of the billing records, it appears that Ms. Scarver assisted in reviewing plaintiff's production to determine whether documents were missing, and summarizing that

information in table and spreadsheet form for Attorney Haas. <u>See</u> Doc. #206-1 at 36-7. Ms. Guthleben completed similar work that was more technology-based. <u>See</u> <u>id.</u> The Court has found no relevant authority in this District -- or in either District in Ohio -- as to a reasonable fee for a litigation support specialist; in the Southern District of New York, a court recently determined that $150 an hour is a reasonable rate for such work. <u>See</u> <u>TufAmerica Inc. v. Diamond</u>, No. 12CV3529(AJN), 2016 WL 1029553, at *6 (S.D.N.Y. Mar. 9, 2016) (reducing a litigation support specialist's rate from $206.85 per hour to $150 per hour), <u>reconsideration granted on other grounds</u>, No. 12CV3529(AJN), 2016 WL 3866578 (S.D.N.Y. July 12, 2016). The Court therefore exercises its discretion to reduce both Ms. Scarver's rate and Ms. Guthleben's rate to $150 an hour, which, as noted above, is commensurate with a reasonable rate for a paralegal in this District, and is also the rate awarded for work by a summer associate. <u>See</u> <u>Retained Realty, Inc. v. Spitzer</u>, 643 F. Supp. 2d 228, 242 (D. Conn. 2009) (finding $150 per hour a reasonable hourly rate for a summer associate); <u>cf. Doe v. Darien Bd. of Educ.</u>, No. 3:11CV1581(JBA), 2015 WL 8770003, at *6 (D. Conn. Dec. 14, 2015) (finding $100 per hour a reasonable hourly rate for a legal intern or summer associate).

### 2. *Hours Billed*

Having determined the reasonableness of the rates requested, the Court turns next to the reasonableness of the hours billed. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437. An application for attorney's fees must be "accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 148 (2d Cir. 2014) (quotation marks and citation omitted). "The district court ... should exclude from [its] fee calculation hours that were not reasonably expended." Hensley, 461 U.S. at 434 (quotation marks and citation omitted).

In support of the instant fee application, the SThree defendants submit time records for work performed in connection with "the deficiencies in Plaintiff's production after August 11, 2016, which gave rise to the SThree Defendants' Second Notice of Discovery Dispute (ECF Doc. 157), and led to the October 24 Order." Doc. #206 at 1-2. Thus, the SThree defendants' time entries date from August 13, 2016, through October 24, 2016. See Doc. #206-1 at 35-38. Pursuant to Rule 37(a)(5)(A), the Court awards attorney's fees for work performed in connection with the SThree defendants' Notice of Discovery

Dispute. Pursuant to Rule 37(b)(2)(C), the Court also awards attorney's fees and costs for failure to comply with the Court's October 7, 2016, Order. The Court will address the reasonableness of the hours expended in relation to each in turn.

### a. Hours Related to Rule 37(a)(5)(a) Sanctions

As discussed above, this discovery dispute was brought to the Court's attention by the filing of the SThree defendants' Notice of Second Discovery Dispute. <u>See</u> Doc. #157. As also noted previously, Judge Thompson's Jurisdictional Discovery Order required that in lieu of filing motions to compel, the parties file notices on the docket describing any discovery disputes. <u>See</u> Doc. #121 at 2. Accordingly, the Court construes the SThree defendants' Notice of Second Discovery Dispute as a motion to compel. The Court notes that plaintiff had an opportunity to respond to said Notice, and indeed, plaintiff did file two responses. <u>See</u> Doc. #160, Doc. #162.[4] Plaintiff further had the

---

[4] A motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). The SThree defendants' Notice states that counsel sent three letters to plaintiff's counsel "seeking to resolve these deficient areas of production and received two responses." Doc. #157 at 2. Attached to the Notice are copies of a number of emails and letters between the SThree defendants' counsel and plaintiff's counsel regarding the deficient production, and evincing the SThree defendants' attempt to resolve the dispute

opportunity to be heard on this Notice during the October 7, 2016, in-person conference, during which the Court granted the relief sought in defendants' Notice. See Doc. #182. The Court has already determined that an award of fees is appropriate as a sanction for plaintiff's failure to adequately respond to defendants' discovery requests. See Doc. #200. Thus, pursuant to the Court's authority under Rule 37(a), the reasonable fees incurred in connection with defendants' Notice/motion will be awarded.

Rule 37(a) entitles defendants "only to the costs that [defendants] would not have incurred but for the other party's conduct." Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC, No. 08CV442(TPG), 2013 WL 3322249, at *3 (S.D.N.Y. July 2, 2013) (quotation marks and citation omitted), aff'd, 679 F. App'x 33 (2d Cir. 2017). Thus, in determining the appropriate fee award, "the dispositive question is whether the costs would have been incurred in the absence of the other's conduct." Id.; see also 246 Sears Rd. Corp. v. Exxon Mobil Corp., No. 09CV889(NGG), 2013 WL 4506973, at *2 (E.D.N.Y. Aug. 22, 2013).

The Court has reviewed the SThree defendants' application for fees associated with the defendants' Second Notice of Deficiencies. The Court considers those entries for work

---

without the Court's intervention. See Doc. #157 at Exhibits 1-6, 9.

performed in connection with the defendants' Notice, including those entries for work performed as a result of plaintiff's failure to provide complete responses to defendants' requests, necessitating the filing of defendants' Notice. The Court also considers those entries for such work performed after the filing of the Notice, as the discovery deficiencies identified in the Notice were ongoing, and the defendants were required to perform work to identify said deficiencies. Thus, the Court considers here those entries from August 13, 2016, through and including the Court's conference on October 7, 2016, related to the instant Notice. The SThree defendants billed a total of 130 hours of time during this period.

A review of the SThree defendants' fee application during the relevant time frame reveals certain entries that were not related to the instant dispute. On September 9, 2016, Attorney Lasley billed .65 hours to prepare for a hearing with the court on discovery disputes; to discuss same with Attorney Haas; and to participate in a conference with the court. See Doc. #206-1 at 35. On the same date, Attorney Haas billed 1.35 hours for communications with counsel regarding the conference with the court and discovery issues; preparing for the conference with the court; and participating in the court's conference. See id. However, Judge Thompson's conference with counsel on September 9, 2016, addressed plaintiff's Third Notice of Discovery

Dispute, concerning a deposition of an SThree defendant witness, Mr. Kavanaugh. See Doc. #152; see also Doc. #164, Minute Entry of September 9, 2016, Telephonic Conference; Doc. #183, Transcript of September 9, 2016, Telephonic Conference. A separate conference was held with Judge Thompson on September 16, 2016, during which the issues raised in the SThree defendants' Notice were discussed. Accordingly, the Court will not award fees for work related to the September 9, 2016, conference, reducing the time by 2.0 hours.

The Court also notes that as the presumption in favor of the forum rule has not been overcome, the time and costs billed by out-of-state counsel for travel to and from the Court's October 7, 2016, conference will not be compensated. "While expenditures for photocopies, postage, binding, filing, and travel are routinely recoverable, travel costs may be denied where a party chooses out-of-district attorneys." Congregation Rabbinical Coll. of Tartikov, Inc., 188 F. Supp. 3d at 345 (quotation marks and citations omitted); see also Harty v. Bull's Head Realty, No. 3:11CV01760(VLB), 2015 WL 1064630, at *12 (D. Conn. Mar. 11, 2015) ("As yet another corollary to the forum rule, expenses and fees related to travel must be excluded from an award of attorney's fees if the hypothetical reasonable client who wishes to spend the least amount necessary to litigate the matter would have retained local counsel. ... Thus,

hours spent traveling by out-of-district attorneys into the district are not hours reasonably expended where competent counsel is available within the district." (quotation marks and citations omitted)). Attorney Haas billed 5.5 hours to travel to Connecticut on October 6, 2016, and 4 hours to return on October 7, 2016. See Doc. #206-1 at 30. The SThree defendants also submitted costs in the amount of $1051.15 for food and travel disbursements for Attorneys Haas and Lasley. See Doc. #206-1 at 38. The SThree defendants had local counsel in attendance at the October 7, 2016, conference.[5] See Congregation Rabbinical Coll. of Tartikov, Inc., 188 F. Supp. 3d at 345–46 ("There is no reason why Defendants should incur greater liability simply because Plaintiffs retained out-of-district attorneys ... and insisted that both attend the pre-motion conference, despite the fact that Plaintiffs had retained competent local counsel, who also appeared before the Court on April 27, 2015." (citation omitted)). Accordingly, the Court declines to award the out-of-district counsel's time or costs associated with travel on this matter, reducing the time billed by 9.5 hours, and costs by $1051.15.

---

[5] Attorney Mirman billed for his travel time to and from the October 7, 2016, conference. See Doc. #206-2 at 3.

### b. Hours Related to Rule 37(b) Sanctions

As discussed in its Order dated October 24, 2016, the Court has also determined that fees are warranted pursuant to Rule 37(b), for violation of the Court's October 7, 2016, Order. <u>See</u> Doc. #200 at 3, 5, 20-21. During the October 7, 2016, conference, the Court ordered plaintiff to perform additional searches for responsive discovery and to review the results of each search. <u>See</u> Doc. #182. After review of plaintiff's resulting certification, defendants' notices of deficiencies, and plaintiff's response, and after an on-the-record conference, the Court determined that plaintiff had failed to comply with the Court's Order. <u>See</u> Doc. #200. Thus, pursuant to Rule 37(b)(2), the reasonable fees caused by plaintiff's failure to comply with the Court's October 7, 2016, Order will be awarded. The SThree defendants billed a total of 27.5 hours of time during this period associated with plaintiff's failure to comply.

### c. Excessive, Duplicative and Vague Billing

The Court finds certain of the SThree defendants' billing entries excessive, duplicative, or vague. <u>See</u> <u>Kirsch v. Fleet St., Ltd.</u>, 148 F.3d 149, 173 (2d Cir. 1998) ("Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded [from a fee award.]" (quotation marks and citation omitted)); <u>see also</u> <u>Tsombanidis</u>, 208 F. Supp. 2d at 277 ("In

determining the number of hours reasonably expended, the Court must exclude hours that are excessive, redundant, or otherwise unnecessary." (citation omitted)). The Court finds that an overall percentage reduction from the total remaining hours is warranted.

The SThree defendants' billing records reveal instances of excessive time spent on several tasks. For example, Attorney Haas billed 11.8 hours to prepare for Judge Thompson's September 16, 2016, conference, which was set to address, in part, the issues raised in the SThree defendants' discovery notice. See Doc. #206-1 at 36. Then, in preparation for the Court's October 7, 2016, in-person conference -- set to address those same issues –- the SThree defendants billed a total of 37.65 hours.[6] See Doc. #206-1 at 36-7.[7] This is excessive. See Doc. #157.[8]

_____

[6] This figure includes hours billed on the day of the conference by both Attorney Haas and Attorney Lasley. On October 7, 2016, Attorney Haas billed 4.2 hours for preparation for the 10:00 a.m. conference. While Attorney Lasley's billing notation indicates that she spent 7.8 hours preparing for and attending the conference, it does not indicate how much time was spent on each task. The October 7, 2016, conference called for attendance at 10:00 a.m. and ended at 3:28 p.m. See Docs. ##170, 179, 180. As the conference lasted approximately five and a half hours, the Court assumes that Attorney Lasley spent 2.3 hours preparing.

[7] The Court notes that this number is based on entries that specifically note that the work was performed in connection with the October 7, 2016, conference.

[8] In contrast, the Palladyne defendants billed a total of 4.4 hours of one attorney's time to prepare for the October 7, 2016,

The Court also finds that an additional reduction of hours is warranted for duplicative efforts. The Court's review of the billing records reveals several instances where more than one individual billed for the same work. See, e.g., Doc. #206-1 at 35 (indicating that on August 29, 2016, Attorney Haas billed 2.7 hours to review plaintiff's response to a deficiency letter, and to draft a response; the next day, Attorney Lasley billed .2 hours to review the same correspondence); Doc. #206-1 at 24 (indicating that on September 28, 2016, Attorney Haas billed 0.5 hours for "[c]ommunication with K. Guthleben regarding identification of missing documents in plaintiff's production" and the same day, Ms. Guthleben billed an undetermined amount of time for the same conversation); Doc. #206-1 at 331 (indicating that on October 19, 2016, Attorney Lasley billed 1.8 hours to "review correspondence with Plaintiff's counsel regarding status of discovery productions; revise notice to Court regarding plaintiff's productions; review Palladyne's filing regarding deficiencies in Plaintiff's discovery production" and Attorney Haas billed 12.1 hours to review plaintiff's discovery materials and to "draft notice responding to same;" .2 hours to draft an email to plaintiff's counsel; and .2 hours to "review Palladyne's notice regarding discovery deficiencies").

conference. It is not clear why the SThree defendants required seven individuals to spend eight times the amount of time preparing for the same conference.

More generally, the SThree defendants billed for the time of two attorneys, a law clerk and a litigation support specialist to review and analyze plaintiff's discovery production. In total, during the relevant time frame, Attorney Haas dedicated 24.6 hours to this task; Attorney Ashbrook .3 hours; Ms. Scarver 8.1 hours; and Ms. Guthleben 5.5 hours. The Court finds that this joint effort, while no doubt thorough, was excessive for the purposes of this fee application. See Retained Realty, Inc., 643 F. Supp. 2d at 241 (reducing hours billed "[w]here too many individuals have billed for the same event, or there are too many billers involved in a particular matter beyond what the court considers to be reasonable").

As a further example of duplicative efforts, Attorney Haas, Attorney Lasley and Attorney Mirman each billed for their attendance at the October 7, 2016, conference. See Doc. #206-1 at 37; Doc. #206-2 at 3. Additionally, Attorney Haas and Attorney Lasley each billed for their participation in the Court's October 13, 2016, and October 21, 2016, telephonic conferences. See Doc. #206-1 at 37-8. While counsel may have had strategic reasons for having multiple counsel present, the Court will not require plaintiff to compensate the SThree defendants for the full amount of each attorney's time. See Congregation Rabbinical Coll. of Tartikov, Inc., 188 F. Supp. 3d at 342 (noting that "[n]otwithstanding the value of collaboration" it

was "unnecessarily duplicative" for three attorneys to attend a pre-motion conference (collecting cases)).

Likewise, on October 6, 2016, Attorney Mirman billed two hours to "review pleadings in preparation for discovery conference." Doc. #206-2 at 3. Attorney Mirman also billed one hour on October 19, 2016, to "review plaintiff's certification, SThree's analysis of deficiencies. Comparison to Court order." Id. Finally, he billed .6 hours on October 21, 2016, for "[r]eview [of] Plaintiff's response to SThree's notice of deficiency re: discovery." Id. Attorney Mirman was not actively participating in the discovery dispute, and there were several other attorneys that were actively participating. This appears to be duplicative.[9]

The Court also finds that during the relevant time frame, several descriptions of work are too vague for the Court to determine whether the work performed was reasonable. "A court may ... refuse to award fees based on time entries that provide a vague description of the work performed." Smart SMR of New York, Inc. v. Zoning Comm'n of Town of Stratford, 9 F. Supp. 2d

---

[9] The Court notes that Attorney Mirman was present only for the morning session of the October 7, 2016, conference, and was excused at noon. See Doc. #191, Transcript of October 7, 2016, conference. He did not speak to any discovery issues during the conference. See id. He also did not participate in the October 13, 2016, or the October 21, 2016, telephonic status conferences. See Doc. #189, Doc. #211.

143, 150 (D. Conn. 1998) (citation omitted). "Entries stating
such vague references as 'review of file', 'review of
correspondence', 'research', 'conference with client', and
'preparation of brief' do not provide an adequate basis upon
which to evaluate the reasonableness of the services and hours
expended on a given matter." Mr. & Mrs. B. v. Weston Bd. of Ed.,
34 F. Supp. 2d 777, 781 (D. Conn. 1999) (citations omitted). For
example, Attorney Ashbrook seeks fees for time on September 20,
2016, and September 22, 2016, but the Court cannot determine
whether the work performed relates to the instant dispute. See
Doc. #206-1 at 36 (on September 20, 2016: "Email correspondence
with C. Haas and A. Goth regarding discovery strategy"); see id.
(on September 22, 2016: "Telephone conference with C. Haas and
A. Goth regarding discovery strategy").

Considering the above deficiencies, the Court determines
that an across-the-board 40% reduction of the fee award is
warranted. See Kirsch, 148 F.3d at 173 (affirming the district
court's judgment to decrease an attorneys' fees award by 50%,
finding that "the court has discretion simply to deduct a
reasonable percentage of the number of hours claimed as a
practical means of trimming fat from a fee application."
(quotation marks and citation omitted)). See also Houston v.
Cotter, 234 F. Supp. 3d 392, 410 (E.D.N.Y. 2017) (finding a 50%
across-the-board reduction in hours warranted); Francois v.

Mazer, 523 F. App'x 28, 29 (2d Cir. 2013) (finding the district court "acted well within its discretion" in applying a 40% across-the-board reduction of fees, which the Court deemed "reasonable under the circumstances"); Smart SMR of New York, Inc., 9 F. Supp. 2d at 151–52 (applying a 50% reduction of hours billed where they were found to be excessive).

Thus, after multiplying the reasonable hourly rates by the number of hours expended, the Court determines that the lodestar figure for the 146 hours of work performed by the SThree defendants in connection with the instant fee application is $40,827.50. After a reduction of that amount by 40% for vague entries, excessive hours and duplicative work, the Court determines that the SThree defendants are entitled to $24,496.50 in attorneys' fees. The Court determines that the SThree defendants are entitled to $232.37 in costs.

### B. The Palladyne Defendants' Application for Attorney's Fees and Costs [Doc. #205]

The Palladyne defendants have submitted an application seeking an award of $20,077.10 in attorneys' fees for 27.6 hours of work performed by two attorneys in connection with the subject discovery dispute. The Palladyne defendants also seek $153.26 in costs. See Doc. #205 at 2. The Palladyne defendants did not file a Notice or motion regarding the subject discovery dispute; accordingly, the Palladyne defendants are entitled only to fees and costs awarded pursuant to Rule 37(b)(2) for

plaintiff's failure to comply with the Court's October 7, 2016, Order.

### 1. *Hourly Rate*

The Court turns first to the hourly rate billed by counsel for the Palladyne defendants. Two attorneys from the law firm of Hughes Hubbard & Reed LLP in New York billed time on the instant matter. See Doc. #205-1 at 2. Amera Z. Chowhan, counsel at Hughes Hubbard & Reed, graduated from law school in 1997. See id. She practices complex litigation, including commercial litigation and cross-border litigation. See id. Attorney Chowhan has extensive experience in state and federal court, at the trial and appellate levels. See id. Attorney Chowhan bills this matter at a rate of $743 per hour, which reflects a 10% discount from her standard rate. See id. Karen Goldberg was an associate at the same firm.[10] See id. She graduated from law school in 2010. See id. She represented clients in complex federal and state court litigation, and billed at a rate of $648 per hour on this matter, which reflects a 10% discount from her standard rate. See id.

The Court finds that these rates are not reasonable, in light of the comparable rates charged in this District. See Doe, 2015 WL 8770003, at *4 (finding, in a civil rights case, that

---

[10] It appears from defendants' filing that Attorney Goldberg is no longer with Hughes Hubbard & Reed, LLP.

"an hourly rate of $650 per hour is unreasonably high and is out of line with prevailing rates ... in this district" (collecting cases)). There is no indication that Attorney Chowhan's experience is so specialized or so extensive that it would warrant an hourly fee that is <u>double</u> what comparable attorneys in this District command. Attorney Goldberg had six years of experience at the time that this work was performed and requests a fee that is more than double what comparable attorneys in this District are typically awarded. Further, the Palladyne defendants make no showing that "the selection of counsel was based on experience and objective factors <u>and</u> that use of in-district counsel would produce a substantially inferior result." <u>CSL Silicones, Inc.</u>, 2017 WL 1399630, at *4 (citations omitted). Accordingly, the Court applies the forum rule, and reduces Attorney Chowhan's hourly rate to $375 an hour and Attorney Goldberg's rate to $250 an hour.

### 2. *Hours Billed*

Turning to the hours requested, the Court first deducts those entries for work performed prior to the Court's October 7, 2016, Order. This results in a reduction of 9.4 hours of Attorney Chowhan's time. <u>See</u> Doc. #205-2 at 3. Next, a review of the fee application reveals that an excessive amount of time was billed in connection with certain tasks. Attorney Chowhan billed an hour for participating in a fourteen minute telephonic status

conference on October 13, 2016. See Doc. #189. The Court therefore reduces Attorney Chowhan's time for this call to .3 hours. Further, Attorney Chowhan and Attorney Goldberg billed a total of 16.1 hours for the drafting of defendants' Notice of Deficiencies, Doc. #192. This Notice required the review of plaintiff's Certification regarding Discovery, Doc. #190, and a review of plaintiff's production. The Palladyne Defendants' resulting Notice of Deficiencies amounts to approximately five and a half pages of written response, and nine pages of attachments. The Court reduces Attorney Chowhan's time spent on this notice from 11.6 hours to 7.9 hours, and Attorney Goldberg's time from 4.5 hours to 2.9 hours.

The Court has determined that the remainder of the time billed by the Palladyne defendants is reasonable. Accordingly, after a total reduction of 15.4 hours, the Court finds that pursuant to Rule 37(b)(2), the Palladyne defendants are entitled to $4,212.50 in attorneys' fees, representing 12.2 hours of time expended.

Turning to the costs sought, as noted above, the Court finds that the amount billed by out-of-state counsel to travel to and from the Court's October 7, 2016, conference is not compensable. See Congregation Rabbinical Coll. of Tartikov, Inc., 188 F. Supp. 3d at 345. Accordingly, the Court declines to award the travel costs sought by the Palladyne defendants, and

awards a total of $4,212.50 in attorneys' fees for the work performed in connection with the instant discovery dispute.

### C. The Daily Sanction, and Palladyne Defendants' Motion to Increase Daily Sanction and for Other Relief [Doc. #225]

On October 24, 2016, after several conferences with counsel and a review of plaintiff's non-compliance with the Court's Orders, this Court found that it was "appropriate, as a deterrent and an incentive, to impose additional monetary sanctions for each day that plaintiff's production of items in the custody of third parties continues to be deficient." Doc. #200 at 21. The Court ordered that, "commencing October 27, 2016, for each business day that the plaintiff fails to produce either the materials sought or a certification that such materials are no longer in existence, plaintiff will be sanctioned $150." Id. The Order continued:

> When plaintiff is confident that production has been completed in accordance with the Court's Orders, plaintiff shall file a status report that contains, as exhibits, copies of the request made, a description of the efforts conducted to obtain the records, and a sworn certification, executed by both counsel and plaintiff personally, that all responsive records received have been provided to the defendants.

Id. at 21-22.

Counsel for plaintiff did not file a status report. On December 23, 2016, the Palladyne Defendants filed a Motion for Sanctions, seeking: (1) to increase the daily $150 sanction; (2) the Court's permission for defendants to seek an adverse

inference; and (3) to hold plaintiff's counsel jointly and severally liable for all sanctions and expenses. See Doc. #225 at 6. The SThree defendants filed a response to the Palladyne defendants' motion, arguing for substantially the same relief. See Doc. #227. Plaintiff did not file any opposition to the Palladyne defendants' motion or to the SThree defendants' response.

On May 17, 2017, the Court issued an Order to Show Cause, requiring counsel for plaintiff "to show cause why plaintiff should not immediately be ordered to pay $20,550, accounting for a $150 daily sanction for the past 137 days, for failure to comply with the Court's October 24, 2016, Order. Specifically, plaintiff has failed to file a status report in accordance with the Court's directives indicating, inter alia, that all responsive records received have been provided to the defendants." Doc. #270. On May 31, 2017, plaintiff filed a response to the Court's Order to Show Cause. See Doc. #282. The response raised several arguments as to why sanctions should not be imposed, and stated that plaintiff had "substantially complied with the Court's October 7 Order" and that "we are not aware of any unproduced material in any category[.]" Doc. #282 at 2. Plaintiff argued that his "prompt compliance" with the Court's Order resulted in complete production of the subject

bank and credit card records by November 9, 2016.[11] See id. at 7.
On June 5, 2017, plaintiff filed a Status Report and
Certification, indicating that his requests were sent by
certified mail on October 11, 2016, and all responses, other
than those noted, were received by November 8, 2016. See Doc.
#285 at 2.

On June 6, 2017, during a telephonic Status Conference,
after noting that "defendants are free to argue for any relief
they deem appropriate, including adverse inferences, in the
briefing of any motions to dismiss," Doc. #287, the Court denied
that portion of the Palladyne defendants' motion that sought to
increase the daily sanction. See Doc. #286. The Court took under
advisement that portion of defendants' motion that sought to
hold plaintiff's attorney jointly and severally liable for any
monetary sanctions imposed. See id. The Court confirmed with
plaintiff that his Status Report and Certification, Doc. #285,
constituted plaintiff's full and final response to the Court's
24, 2016, Order, and found that it was "appropriate to move on
to the filing of motions regarding jurisdiction at this time, as

_____

[11] Plaintiff acknowledged that he had been unable to obtain his
Discover credit card records, as that file had been transferred
to a collection firm years prior, and the collection firm had
not responded to plaintiff's multiple requests. See Doc. #282 at
9-10. In a separate response to the defendants' notice of
deficiencies, plaintiff also acknowledged that he had not
received a response from the Internal Revenue Service to his
submission of form 4506-T. See Doc. #283 at 4.

it does not appear that further action or delay will result in any additional compliance or production by plaintiff." Doc. #287.

First, the Court addresses the daily sanction. While plaintiff contends that he "substantially" complied with the Court's October 7, 2016, and October 24, 2016, Orders, plaintiff "acknowledges responsibility for not having filed the certification" and argues that defendants suffered no harm from that omission. Doc. #282 at 10. Defendants, in turn, claim that documents still remain to be produced. See Doc. #273.

The Court imposed this sanction on plaintiff because he failed to comply with the Court's Order of October 7, 2016.

> Among the deficiencies in production observed by the Court, plaintiff still has not clearly and unequivocally explained the scope of his search in response to defendants' requests; has not diligently and appropriately sought copies of documents in his control but in the physical custody of third parties; and has not timely provided all responsive materials to defendants.

Doc. #200 at 5. The Court discussed plaintiff's insufficient efforts to obtain records from third party institutions, and ordered, on October 24, 2016, that plaintiff "shall immediately make a renewed effort to obtain his financial records from these third-party institutions. ... Any request – be it in person, by phone, by email, by letter, by form, or by some other means – must be documented and then produced." Id. at 17. The Court then reminded counsel that "he is obligated to oversee the discovery

process on his client's behalf, and that this aspect of discovery is no exception." Id.

Plaintiff and his counsel inexplicably failed to comply with the Court's Order. The Court cannot understand why plaintiff did not file a certification on November 8, 2016, if plaintiff now contends that production was complete on that date. Plaintiff certainly was aware of the Court's Order, and was also aware of defendants' filings that indicated that the daily sanction was continuing to accrue.

Nevertheless, the Court declines to sanction plaintiff for the 148 business days he failed to comply with the Court's October 24, 2016, Order. Sanctioning plaintiff at this point for the full amount of time would not accomplish any additional deterrence or provide plaintiff with additional incentive to comply with the Court's further orders, and would not be proportional to the seriousness of the sanctioned conduct. Accordingly, the Court will sanction plaintiff $150 a day for nine business days, representing the time between and including October 27, 2016, and November 8, 2016, crediting plaintiff's argument that by that date, he had substantially complied with the production of materials from third parties. This amounts to a sanction of $1,350, payable to the Clerk of the Court. See Miltope Corp. v. Hartford Cas. Ins. Co., 163 F.R.D. 191, 195 (S.D.N.Y. 1995) ("Due regard for the need to vindicate the

public interest in the sound administration of justice, as well as the deterrent function of Rule 37 sanctions requires the imposition of a fine, payable to the Clerk of the Court." (quotation marks and citations omitted)).

The final issue to address is whether counsel should be held jointly and severally liable with plaintiff. While the Court did not state this specifically in its prior Order, it was the Court's intention to hold counsel accountable with his client. Rule 37 provides that, as a sanction for failing to obey a discovery order, a court "must order the disobedient party, the attorney advising that party, **or both** to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). See also J. M. Cleminshaw Co, 93 F.R.D. at 349 ("[I]t is clear both from the language of Rule 37 and from the cases construing that rule that counsel may be held personally liable for the expenses, including attorney's fees, caused by the failure to comply with discovery rules and orders."); Roadway Exp., Inc. v. Piper, 447 U.S. 752, 763 (1980) ("Both parties and counsel may be held personally liable for expenses, including attorney's fees caused by the failure to comply with discovery orders." (quotation marks and footnote omitted)).

The Court finds that counsel was on notice that failure to comply with the Court's orders would subject him to sanctions. The Court had made it abundantly clear to counsel throughout the Court's involvement in this discovery matter that it considered counsel to be responsible, in part, for his plaintiff's failings. See, e.g., Doc. #182 at 11 ("Plaintiff and his counsel are reminded that a search for responsive materials must begin by a determination of whether a given item is responsive[.]"); Doc. #191 at 14-15 ("[T]he obligation of counsel is not at the last, last, minute. The obligation of counsel is to supervise the search from the beginning."); Doc. #200 at 7 ("As the Court has repeatedly reminded counsel, he has an ongoing duty to oversee plaintiff's efforts to comply with discovery requests." (citations omitted)); Doc. #200 at 7 ("Plaintiff's counsel has made contradictory representations about the discovery conducted to date, and his involvement therein."); Doc. #200 at 8 ("Attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search."); Doc. #200 at 9-11 (detailing the contradictory representations plaintiff's counsel had made to the Court regarding the searches conducted); Doc. #200 at 11 ("In sum, plaintiff's counsel has made it virtually impossible for either the defendants or the Court to gain a clear understanding of what searches were conducted, when, and by whom, and whether the

results of the searches were reviewed for responsiveness, or privilege, or both."); Doc. #200 at 20 ("Defendants' efforts at obtaining jurisdictional discovery have been repeatedly frustrated by plaintiff's counsel's contradictory representations, late and incomplete productions, and failure to oversee the searches and production of discovery."). Cf. Sterling Promotional Corp. v. Gen. Acc. Ins. Co. of New York, 86 F. App'x 441, 445 (2d Cir. 2004) (affirming the District Court's decision to hold plaintiff and his counsel jointly and severally liable for monetary sanctions and finding that counsel was aware that he could be subject to sanctions, because "the court had made it clear to [plaintiff's counsel] that it considered [counsel], and not merely [plaintiff], at fault"); Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 527 (2d Cir. 1990) (finding that counsel who was held jointly and severally liable for monetary sanctions had ample notice where the "proceedings that led to the district court's imposition of the sanction included several conferences before the magistrate [judge], which resulted in two court orders, the hearing at which the magistrate[] [judge] imposed the sanction, an appeal of the magistrate [judge's] order, and a review of the matter by the district court. In view of these proceedings, it stretches the imagination to argue that appellants did not have notice of, or the opportunity to be heard about, the sanction imposed.").

Further, the Court notes that both its October 24, 2016, Order and the Palladyne defendants' Motion to hold counsel jointly and severally liable referenced Rule 37(b)(2), and thus counsel was aware that he could be held liable for the sanctions imposed. See Sterling Promotional Corp., 86 F. App'x at 445 ("However, [plaintiff's counsel] was aware that [defendant] brought its motion to dismiss under Rule 37, and was thus aware of the Rule's provision that 'the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure[.]'" (quoting Fed. R. Civ. P. 37(b)(2))). Notably, as discussed above, plaintiff did not file an objection to the Court's Order, and did not submit any opposition or response to the Palladyne defendants' motion, despite having the opportunity to be heard.

The Court finds that counsel for plaintiff "was on notice that he was under the umbrella of the [C]ourt's statutory power to sanction," Sterling Promotional Corp., 86 F. App'x at 446, and finds that counsel shall be held jointly and severally liable for the monetary sanctions imposed by the Court. Accordingly, the Court **GRANTS** that portion of the Palladyne defendants' motion that seeks to hold plaintiff's counsel Alan H. Kaufman jointly and severally liable for the monetary sanctions, fees and costs that are imposed by this Order.

## IV.  CONCLUSION

Accordingly, for the reasons set forth above, the Court **GRANTS, in part,** SThree Defendants' Second Application for Attorney's Fees **[Doc. #206]** and awards the SThree defendants $24,496.50 in attorneys' fees and $232.37 in costs; Court **GRANTS, in part,** Palladyne Defendants' Application for Attorney's Fees and Costs **[Doc. #205]** and awards the Palladyne defendants $4,212.50 in attorney's fees; sanctions plaintiff $1,350.00, payable to the Clerk of the Court; and **GRANTS, in part,** Palladyne Defendants' Motion to Increase Daily Sanction and for Other Relief **[Doc. #225],** and holds plaintiff and plaintiff's counsel Alan W. Kaufman jointly and severally liable for the above monetary sanctions.

This is not a Recommended Ruling. This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" statutory standard of review. See 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.

SO ORDERED at New Haven, Connecticut, this 15th day of September, 2017.

_____/s/_____

HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
